PEOPLE v HAWKINS

Docket No. 53894. Submitted November 5, 1981, at Detroit.—Decided April 6, 1982.

Robert Hawkins was convicted of first-degree murder, Recorder's Court of Detroit, Vera Massey Jones, J. The murder occurred during the alleged commission of a larceny. The defendant appeals, alleging several errors. *Held:*

1. The murder statute makes no distinction between larceny which is a felony and larceny which is a misdemeanor. Both types of larceny are encompassed by the statute.

2. Testimony of a police officer regarding a statement of a witness not produced at trial, which statement related information given to the witness by a third person, was properly excluded from evidence. The proffered testimony was hearsay within hearsay and not admissible unless both statements came within an exception to the hearsay rule. Because the missing witness's credibility could not be tested his statement was not admissible.

3. The trial court found that the prosecution failed to use due diligence in attempting to produce a witness but no finding was made as to whether the failure to produce the witness prejudiced the defendant. The case is remanded for a hearing to determine whether prejudice occurred.

4. The trial court erred in allowing the prosecutor to introduce prior inconsistent testimony of a prosecution witness, whether it was introduced to impeach the witness or to refresh his memory. However, because of substantial testimony of other witnesses regarding the point in question reversal is not required.

5. The trial court's instructions to the jury regarding aiding

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 493, 496.
[3] 63 Am Jur 2d, Prosecuting Attorneys § 27.
    81 Am Jur 2d, Witnesses § 2.
[4] 81 Am Jur 2d, Witnesses § 619.
[5] 5 Am Jur 2d, Appeal and Error § 737.
[6] 40 Am Jur 2d, Homicide §§ 500, 509.
[7] 81 Am Jur 2d, Witnesses § 569.
[8] 81 Am Jur 2d, Witnesses § 629.

and abetting and regarding malice were not erroneous under the standards extant at the time of the trial.

6. The trial court's refusal to suppress evidence of the defendant's prior conviction was not an abuse of discretion.

7. The trial court's instructions on lesser-included offenses were proper.

Remanded.

P. E. DEEGAN, J., concurred in the result but would hold that the prosecutor's use of a witness's prior inconsistent statement in order to allow the witness to explain the inconsistency was not improper impeachment of the witness.

OPINION OF THE COURT

1. EVIDENCE — HEARSAY — RULES OF EVIDENCE.

Evidence which constitutes hearsay within hearsay may not be admitted at trial unless both statements satisfy an exception to the hearsay rule (MRE 805).

2. EVIDENCE — HEARSAY.

The written statement of an endorsed witness who is not produced at trial, which contains statements of a third party regarding the guilt of a defendant, is not admissible where the witness is not available for cross-examination to determine his credibility.

3. WITNESSES — FAILURE TO PRODUCE WITNESS — PREJUDICE.

A case may be remanded for a determination of whether a criminal defendant was prejudiced by the prosecution's failure to produce an endorsed witness where it was determined at trial that the prosecution did not use due diligence in attempting to produce the witness but where no determination of prejudice was made by the trial court.

4. WITNESSES — CREDIBILITY OF WITNESS — RULES OF EVIDENCE.

The credibility of a witness may be attacked by the party calling the witness if the witness's testimony is contrary to that anticipated by the calling party and is injurious to the calling party's case (MRE 607).

5. APPEAL — CRIMINAL LAW — EVIDENCE — COURT RULES — RULES OF EVIDENCE.

The erroneous admission of evidence does not serve as a basis for reversal of a criminal conviction unless the refusal to reverse would be inconsistent with substantial justice (GCR 1963, 529.1; MRE 103[a]).

6. HOMICIDE — MURDER — JURY INSTRUCTIONS — MALICE.

A jury instruction in a trial for first-degree murder which allowed the inference of malice from the intent to commit an underlying larceny was not erroneous in a trial conducted prior to a Supreme Court decision requiring malice to be proven as an element of any murder rather than being inferred from the intent to commit an underlying felony.

7. WITNESSES — IMPEACHMENT — PRIOR CONVICTIONS.

Defense counsel in a criminal case may impeach a witness without thereby opening the door for impeachment of the defendant; the trial judge must separately exercise his discretion as to each witness regarding the impeachment of that witness by the use of evidence of prior convictions.

CONCURRENCE BY P. E. DEEGAN, J.

8. WITNESSES — INCONSISTENT STATEMENTS — IMPEACHMENT — RULES OF EVIDENCE.

*A prosecutor properly may confront a prosecution witness with an earlier, inconsistent statement of the witness in order to allow the witness to explain the inconsistency; by so doing the prosecutor is not impeaching his own witness contrary to the rules of evidence (MRE 607).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Richard B. Ginsberg,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P.J., and BEASLEY and P. E. DEEGAN,* JJ.

BEASLEY, J. Defendant, Robert Hawkins, was charged in a two-count information with first-degree murder, committed during the perpetration or attempted perpetration of a larceny, in violation of MCL 750.316; MSA 28.548, and felony-fire-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

arm, in violation of MCL 750.227b; MSA 28.424(2). Defendant was convicted by a jury of murder in the first degree, but was found not guilty of the felony-firearm charge. After being sentenced to the mandatory term of life imprisonment, defendant appeals as of right.

First, defendant argues that the so-called felony-murder statute does not include killings committed in the course of larcenies which are not felonies. In this case, the killing took place on November 6, 1978, and defendant was tried in March and April of 1979. The applicable statute in effect at that time provided:

"All murder * * * which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, *larceny of any kind,* extortion or kidnapping, shall be murder of the first degree." (Emphasis added.) MCL 750.316; MSA 28.548, as in force after the 1969 amendment and before the 1980 amendment.

As indicated, the plain language of the statute is larceny of any kind, which words do not appear to lend themselves to ambiguity or tortured interpretation. Defendant's claim is without merit. The words "larceny of any kind" include both larcenies that are felonies and larcenies that are misdemeanors. We reject the argument made by defendant in this regard.

Second, defendant assigns as error the ruling of the court precluding police officer William Dildy from testifying as to a statement given by Theodore Williams. The record indicates that apparently three persons were involved in the subject killing: Philip Scott, Joseph Turner and defendant. Turner was given immunity in exchange for his testimony, which inculpated defendant. Scott pled

guilty to murder in the second degree and was sentenced to prison.

On the day of the killing, Officer Dildy took a statement from Theodore Williams, which appeared to involve all three, Hawkins, Scott and Turner, in the larceny killing and which gave some indication that Scott had actually killed the victim. The prosecution endorsed Williams as its witness but failed to produce him at trial. The trial court found that the prosecution failed to exercise due diligence to procure his appearance. At trial, after the trial court sustained the objection made by the prosecution to admission of testimony regarding the contents of the statement taken by Officer Dildy, the statement was admitted on a special record and, thus, is available for review on appeal.

The admissibility of a declaration against interest, as an exception to the hearsay rule, is governed by MRE 804(b)(3), which provides:

"A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable person in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."[1]

This rule does not require the declarant to be the party on trial. In fact, the rule comes into play only when the declarant and the accused are

[1] The Michigan Rules of Evidence were adopted January 5, 1978, to be effective March 1, 1978.

different people. Prior to adoption of the Rules of Evidence, Michigan law allowed such a statement even in the absence of corroborating circumstances.[2] The statements involved here are of Scott and of the witness, Williams. This evidence constitutes hearsay within hearsay and may not be admitted unless both statements satisfy an exception to the hearsay rule.[3]

Williams' written statement indicates that Scott made his statement shortly after the shooting occurred, in the presence of friends or acquaintances, without any apparent fear that it would result in his being turned in to the police. There was not any need for him to make up the story at that point in order to exculpate defendant.

Finally, Scott had, at that time, not been granted immunity from prosecution and, thus, was not without fear that the statement could be used against him. We hold that these circumstances are sufficient to indicate the trustworthiness of Scott's statement and to show that it was not fabricated to relieve defendant of possible criminal liability.[4] However, the record does not indicate circumstances showing the trustworthiness of Williams' statement to Officer Dildy. Thus, while Scott's statement might have been admissible, it does not appear to be within an exception to the hearsay rule that would allow admission of Williams' written statement.

Defendant also argues that the statement with which we are concerned is actually that of Officer

---

[2] Committee Note to MRE 804(b)(3), Michigan Court Rules Annotated, Evidence Rules (West, 1979); *People v Edwards,* 396 Mich 551; 242 NW2d 739 (1976), which was a 3-2 decision with two justices not participating.

[3] See MRE 805.

[4] *People v Dortch,* 84 Mich App 184, 191; 269 NW2d 541 (1978), *People v Robertson,* 87 Mich App 109, 114; 273 NW2d 501 (1978).

Dildy and should be admissible as a business record under MRE 803(6). Actually, the statement made by Williams and written down by Dildy was, in fact, signed by Williams after it was written. However, there was no way of cross-examining Williams as to whether or not he was truthful under the then present circumstances where he was not present at trial. To put it another way, there was not any way in which Williams' credibility could have been tested with regard to the alleged statement. There was not any exception to the hearsay rule that would allow admission of Williams' statement.

Defendant also claims that the declaration was admissible on constitutional grounds, citing *Chambers v Mississippi.*[5] In *Chambers,* the defendant, charged with killing a police officer, sought to introduce a written sworn confession of a third party which subsequently had been repudiated. The trial court held that, under Mississippi evidentiary rules, the repudiated statement could not be exhibited to the jury.

In addition, the defendant sought to introduce testimony of three witnesses who said that shortly after the shooting the third person told them he had shot the police officer. The trial court held their testimony inadmissible as hearsay. The Supreme Court reversed on the ground that defendant was deprived of his due process right to a fair trial under the particular facts of that case.

*Chambers* is distinguishable from the within case. In *Chambers,* the three witnesses were present and available for cross-examination. Such is not the case here. In *Chambers,* the Supreme Court indicated the probability that the state-

---

[5] 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

ments were inherently trustworthy.[6] In the within case, there was no method by which to test the credibility of Williams. We hold that *Chambers* does not apply to require reversal here. It was not reversible error to uphold the objection to the testimony of Officer Dildy regarding the statement made by Williams.

Third, defendant claims that it was reversible error for the trial judge to submit to the jury the question of whether the prosecutor used due diligence in obtaining the presence of an endorsed witness, who was not a res gestae witness, where the trial judge had already conducted a hearing and made a finding that the prosecution had failed to exercise due diligence.

On appeal, the prosecution confesses error by the trial court in submitting the question of due diligence to the jury over defense objection. The prosecutor says that this result is mandated by *People v Pearson.*[7] Although *Pearson* was decided three months before trial in this case, apparently neither the prosecutor nor defense counsel were aware of it. The prosecutor points out that *Pearson* was, in fact, not published until one week before this trial began and cites *People v McDaniels*[8] as explanation of the problem.

The prosecution also argues that if, in fact, witness Williams had testified at trial, the statement allegedly given to him (Williams) concerning which he (Williams) made a statement to Officer Dildy would not, in any event, be admissible. The prosecution further argues that the statement is wholly irrelevant to the issue of defendant's guilt or innocence as an aider and abettor.

---

[6] *Chambers, supra,* 300.

[7] 404 Mich 698, 722; 273 NW2d 856 (1979).

[8] 70 Mich App 469, 477; 245 NW2d 793 (1976) (Judge KELLY, *dissenting*).

In the within case, while the trial judge did find that the prosecution had failed to exercise due diligence to secure the presence of witness Williams and did instruct the jury that if it so found, it could infer that the missing witness's testimony would have been unfavorable to the prosecutor's case, defendant did not, in fact, then seek a post-conviction hearing to determine whether he was, in fact, prejudiced by the nonproduction of witness Williams. While it can be argued that prejudice occurred, based on the trial judge's comment that it might have been beneficial to defendant to have the evidence, apparently referring to the statements made to Williams by Scott, the trial court was not asked, and did not actually make a finding, as to whether or not prejudice to defendant occurred by failure to produce witness Williams.

In short, we do not agree with defendant that a prejudice hearing would not serve any purpose because the trial court had already determined that his testimony might be helpful to the defense. Defendant has failed to preserve this issue for appellate review because of his failure to move the trial court for a post-trial prejudice hearing. However, since the prosecution appears to concede that defendant is entitled to a prejudice hearing, we remand this case to the trial court for a hearing to determine whether or not prejudice did occur by the failure of the prosecution to exercise due diligence to produce witness Williams. This procedure finds support in *People v Gordon.*[9]

Next, defendant claims that the prosecution attempted to impeach and rehabilitate its own witness, the alleged accomplice, Joseph Turner, with prior inconsistent statements, over defendant's ob-

---

[9] 99 Mich App 142; 298 NW2d 8 (1980).

jection and before questioning of the witness by defendant. Defendant claims that it was reversible error for the trial court to permit the prosecution to so impeach and rehabilitate its own witness.

In this case, Joseph Turner was called as a witness during the preliminary examination and testified from his hospital bed in Detroit General Hospital. Turner was told that if he told the truth he would not be charged in this case. At the preliminary examination Turner testified that while he sat in the car, defendant, armed with a .38-caliber revolver that had been given him by defendant Scott, went into a home together with defendant Scott to rob the victim. He testified that shortly thereafter they returned running to the car and drove away, during which time defendant said that he had to "bust" the victim. At the preliminary examination, Turner did not testify as to hearing any gunshots. However, at trial, the following occurred:

"*Q. [Prosecutor]:* While you were in the car, did you hear any noise, referring to when the car was sitting at Mr. Hailey's?

"*A. [Turner]:* I thought I heard shots, that is about all.

"*Q.* When was that?

"*A.* When I was sitting out in the car, when I was sitting in the car waiting for them to come back.

"*Q.* What kind of noise did you hear if you heard a noise?

"*A.* Gunshots.

"*Q.* How many?

"*A.* I only heard it once."

At the preliminary examination, the following question was put and answer given:

"*Q. [Mr. Bracy—defense counsel]:* Okay, fine. Did you hear any shots?

"*A. [Turner]:* No.

"*Q.* You heard no shots at all?

"*A.* No."

At trial, the prosecutor, after receiving the answer that Turner had heard a gunshot, commenced to refer Turner to the preliminary examination and, when he said, "I would like to have you read this question and ask—", defense counsel objected on the ground that the prosecutor was trying to impeach his own witness and that a proper foundation had not been laid and, generally, asked whether the prosecutor was trying to refresh his witness's recollection. There then followed an exchange between the court and counsel in the absence of the jury.

The trial court then permitted the prosecutor to ask the witness to attempt to explain the inconsistency between his testimony at the preliminary examination and at trial. In the course of the examination, Turner then testified that he had been shot at and hit nine times on the occasion of his being taken into police custody.

It would appear that the basis for the attempted questioning of Turner was to impeach him under MRE 607(2)(C). The prosecution argued during trial that it was surprised by Turner's testimony and that the inconsistency injured its case. The fact would appear to be that the prosecutor did seek to impeach Turner and then to rehabilitate him before offering him for cross-examination.

Impeachment of a witness is governed by MRE 607 which provides:

"The credibility of a witness may be attacked by
* * *

"(2) the calling party if * * *

"(C) the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case."

The trial court appeared to rule that Turner's trial testimony was not actually injurious to the prosecution's case. The evidence was not admissible for the purpose of refreshing Turner's memory because no foundation was laid. Turner never stated at trial that he could not recall whether he heard any gunshots being fired. His response to the prosecutor's question was that he thought he heard shots.

In the usual situation, when a prosecutor receives favorable testimony in an earlier proceeding and expects to get that same testimony at trial and then asks the same question, but gets a contrary response, he is permitted to impeach. In the instant case, the situation was reversed. During preliminary examination, Turner testified that he heard no gunshot. This response was not helpful to the prosecutor's case.

It is, therefore, difficult to understand why the prosecutor even would have asked that question again at trial, unless it was aware that the response would be different. It would not be unreasonable to conclude that the prosecutor did anticipate the more favorable response and decided to use the response not only for its substantive value but also because it gave the prosecutor an opportunity to disclose to the jury the circumstances under which Turner testified at the preliminary examination.

The prosecutor's claim that the testimony was injurious would only arise on a theory that it was injurious because it was inconsistent with earlier testimony and, thus, called Turner's, or the prose-

cutor's, own credibility into question. We conclude
that the trial court erred in permitting the testi-
mony, either to refresh Turner's recollection or to
impeach him. However, the erroneous admission of
the evidence does not serve as a basis for reversal
unless the refusal to reverse would be inconsistent
with substantial justice.[10] There is no reason to
reverse defendant's conviction due to the sub-
stance of Turner's answer, because three other
witnesses testified to the fact that either one or
two shots had been fired. Thus, we hold this error
does not require reversal.

Next, defendant claims that the trial court's
jury instructions regarding aiding and abetting
and regarding malice were each reversibly errone-
ous. The objected-to jury instructions were essen-
tially the traditional pre-*Aaron*[11] instructions given
in this type of situation. On aiding and abetting,
the trial court's instruction was as follows:

"All persons who aid or assist in the commission of a
crime are as liable as if they had directly committed
the crime and may be convicted of the principal offense
or as an aider and abettor.

"Now, the defendant, Robert Hawkins, is charged
with murder first degree-felony larceny. It is alleged
that it was in the course of committing a larceny.

"Before you may convict, you must be convinced
beyond a reasonable doubt:

"First, that the defendant intended to commit the
crime of larceny at the time of giving the aid or
encouragement.

"Second, that the defendant performed acts or gave
encouragement which aided or assisted the commission
of the crime of larceny, either before or at the time of
the commission of the crime.

---

[10] GCR 1963, 529.1; MRE 103(a).

[11] *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980).

"Third, that the crime of murder first degree occurred as a result of this larceny.

"Fourth, that this crime which occurred was fairly within the criminal plan and the defendant might have expected this to happen in the course of committing this larceny.

"Now, it does not matter how much aid, advice or encouragement was given. However, you must find that the defendant intended the commission of the crime of larceny and that the aid, advice or encouragement the defendant gave did in fact aid, advise or encouraged the commission of the crime.

"Mere presence, even with knowledge that an offense is planned or is being committed, is insufficient to establish that the defendant aided or assisted in the commission of the crime."

With respect to malice, the trial court's instruction was as follows:

"If you find that the defendant consciously intended to commit or attempt or assisted another in the crime of larceny, you may infer that he knowingly created a very high risk of death with the knowledge that it probably would cause death."

The felony-murder statute provides:

"Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, *larceny of any kind,* extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life." (Emphasis added.)[12]

As previously indicated, the felony-murder stat-

[12] MCL 750.316; MSA 28.548.

ute makes it altogether clear that there is not any distinction between so-called misdemeanor larceny and felony larceny in connection with determination of the degree of murder. For purposes of this decision, whether the larceny was a misdemeanor or a felony is irrelevant. The statute says "larceny of any kind"; we do not have any difficulty in interpreting that language to encompass larcenies that are misdemeanors as well as those that are felonies.

However, the language of the statute is "murder" and not "killing". According to *People v Wilder*,[13] the felony-murder rule has traditionally allowed courts to supply the element of malice in felony-murder prosecutions from the intent to commit the underlying felony. Consequently, we decline to find error in the aiding and abetting instruction given by the trial court under the pre-*Aaron* rule.

After *Aaron, supra,* the rule is:

"Accordingly, we hold today that malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. We further hold that malice is an essential element of any murder, as that term is judicially defined, whether the murder occurs in the course of a felony or otherwise. The facts and circumstances involved in the perpetration of a felony may evidence an intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm; however, the conclusion must be left to the jury to infer from all the evidence."[14]

---

[13] 411 Mich 328, 338; 308 NW2d 112 (1981).

[14] *Aaron, supra,* 728-729.

In *Wilder, supra,* the Court described the requirement as follows:

"What is henceforth required in all first-degree murder prosecutions in this state is that the trial court include within its instruction to the jury the element of malice as defined in *Aaron.* The underlying felony itself will no longer per se provide the element of malice in such prosecutions."[15]

We decline to find that the malice instruction employed by the trial court was clearly in violation of the pre-*Aaron* rule.[16] In *Aaron,*[17] the Court said:

"This decision shall apply to all trials in progress and those occurring after the date of this opinion."

*Aaron* was decided November 24, 1980. The within trial was completed on April 3, 1979. We find that the rule of *Aaron* is inapplicable to the ¬ithin case and, as indicated, decline to find that the trial court's subject instructions to the jury constituted error under the pre-*Aaron* rule.[18]

It may be argued that, prior to *Aaron,* the state of the law was that the intent to commit an inherently dangerous felony would be the sole basis for establishing murder. Since we believe that any larceny from a person is an inherently dangerous crime, it is unnecessary for us to decide or dwell further upon defendant's argument in this regard.

Defendant also argues that it was error for the

---

[15] *Wilder, supra,* 340.

[16] See *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977), *aff'd in part, rev'd in part* 411 Mich 982 (1981).

[17] *Aaron, supra,* 734.

[18] *People v Bradley,* 106 Mich App 373, 381; 308 NW2d 216 (1981).

trial court to deny his motion to suppress evidence of his prior conviction when the effect of this ruling was to prevent his testifying. This is one of those cases where defense counsel impeached the prosecutor's witness (Joseph Turner) by showing that he had three times previously been convicted of felonies. We recognize that a recent decision of the Supreme Court[19] permits impeachment of a witness by defense counsel in a criminal case without thereby opening the door for impeachment of a defendant. That case states that the trial judge must separately exercise his discretion as to each witness in deciding whether or not that particular witness may be impeached through evidence of prior convictions.

In the present case, the trial judge did separately exercise his discretion, finding that defendant's prior felony conviction related to his honesty and that the probative value of the evidence outweighed its prejudicial effect. We do not find any abuse of discretion.

Defendant further claims that the trial court erred by failing to instruct the jury *sua sponte* on larceny as a lesser included offense to the charge of first-degree murder. In this case, the trial court did instruct the jury on second-degree murder as a lesser included offense of the crime of first-degree murder in accordance with *People v Henry*.[20] There is not any requirement that the court, in the absence of a request, instruct on other lesser included offenses. We hold that defendant's claim of error in this regard is without merit.

Consequently, we remand for a hearing to determine whether defendant was prejudiced by the

---

[19] *People v Hayes*, 410 Mich 422; 301 NW2d 828 (1981).

[20] 395 Mich 367; 236 NW2d 489 (1975).

prosecutor's failure to use due diligence to secure the presence of witness Williams.

Remanded.

J. H. GILLIS, P.J., concurred.

P. E. DEEGAN, J. *(concurring)*. I respectfully concur in the result reached by the majority.

However, I do not agree that the trial court erred in allowing the prosecutor to question his witness about an inconsistency between his testimony at the preliminary examination and the trial.

Under the factual situation presented in this case, I find that the prosecutor neither impeached nor rehabilitated the witness Turner with his inconsistent statement. The prosecutor merely used a defensive strategy to bring out Turner's inconsistent statement in order to allow him to explain the inconsistency. This trial tactic is permissible because counsel plainly is not impeaching his own witness as precluded by MRE 607 but is acting defensively in a manner which no rule of law prevents.

Moreover, in a related area, it is a frequent occurrence that defense counsel will bring out defendant's prior criminal record as a matter of strategy in order to lessen the impact of an expected attack on his credibility. This strategy has not been found to be improper even though the opposing party's attack has not preceded the rehabilitating explanation. Compare *People v Lytal,* 96 Mich App 140, 155-158; 292 NW2d 498 (1980), where this Court allowed the prosecutor to anticipate a cross-examination by defense counsel of alleged accomplice witnesses for the prosecution on the matter of a prior deal with the prosecutor in exchange for their testimony.