PEOPLE v LANGFORD

1. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFESSIONS—VOLUNTARI-
   NESS OF CONFESSIONS—PRESERVING ISSUE—STATUTES.

   Absent a finding of manifest injustice the issue of the voluntari-
   ness of a defendant's confession has not been preserved for
   appellate review where the defendant did not challenge the
   voluntariness of the confession before or during trial (MCLA
   769.26; MSA 28.1096).

2. HOMICIDE—CONSTITUTIONAL LAW—CONFESSIONS—VOLUNTARINESS
   OF CONFESSIONS—PLEA BARGAINS—EVIDENCE.

   A confession made by a defendant pursuant to a plea bargain
   whereby the defendant gave full details of two homicides and
   agreed to testify against others involved in the crimes in return
   for dismissal of charges on those homicides and an opportunity
   to plead guilty to second-degree murder on another homicide
   charge was voluntary and admissible as evidence against the
   defendant at a trial necessitated by the defendant's failure to
   fulfill his part of the bargain where (1) the defendant had been
   advised of and knew his rights, (2) the defendant had an
   attorney with him with whom he had consulted, (3) the defend-
   ant initiated and secured the beneficial plea bargain for him-
   self, and (4) the defendant, for his own reasons, violated the
   agreement.

Appeal from Berrien, Chester J. Byrns, J. Sub-
mitted May 3, 1977, at Grand Rapids. (Docket No.
30112.) Decided June 8, 1977. Leave to appeal
applied for.

Terry Y. Langford was convicted on two counts
of first-degree murder. Defendant appeals. Af-
firmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 582, 583.
[2] 21 Am Jur 2d, Criminal Law §§ 485, 493, 494.

*Derengoski,* Solicitor General, *John Smietanka,* Prosecuting Attorney, and *Sally M. Zack,* Assistant Prosecuting Attorney, for the people.

*David A. Swanson,* for defendant.

Before: J. H. Gillis, P. J., and D. E. Holbrook and A. C. Miller,* JJ.

D. E. Holbrook, J. Defendant was convicted by the trial court, after proper waiver of jury trial, on November 7, 1975, of two counts of first-degree murder, MCLA 750.316; MSA 28.548. The record reveals that defendant was found guilty of executing Brenda Freeman and her seven-year-old son Johnny. The homicides were committed as part of an insurance fraud scheme in which defendant herein was a hit man in this murder which the trial court found: "as the most brutal, planned, heartless, savage killings in the county's history". Following conviction defendant's motion for a new trial, alleging that his confession which was used at trial was involuntary, was denied. Defendant appeals.

The record reveals that defendant herein was charged with these murders and was at least under suspicion for other similar homicides. Defendant initiated discussions concerning a possible bargaining agreement and subsequently confessed to these two murders. In return for testimony against the other parties to these murders, these charges were to be dismissed and defendant was to be allowed to plead guilty to second-degree murder in another homicide. Defendant's confessions supplied graphic and horrifying detail into these murders for money. Defendant subsequently refused to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

testify against the others and went to trial on these two counts of first-degree murder. Defendant maintains now that his confession was per se involuntary.

Defendant did not challenge the voluntariness of this confession before or during trial.[1] No *Walker*[2] hearing was held or requested. Absent a finding of manifest injustice this issue has not been preserved for appellate review, MCLA 769.26; MSA 28.1096, *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976).

The record reveals that defendant initiated discussions concerning the "plea bargain". Defendant even demanded that the agreement be in writing. Defendant was fully informed of all his *Miranda*[3] rights several times. Defendant was represented and advised by counsel. There is no claim that defendant was illiterate, of unsound mind, was under coercion or duress, or in any other way deprived of the exercise of free will. Defendant was able to weigh all the circumstances involved. He freely chose to confess and reveal the facts herein. Defendant, however, later changed his mind and refused to live up to his end of the plea bargain and justifiably these charges were then brought. Defendant now argues that his confession was per se inadmissible.[4] Based on the record

[1] Defense counsel did challenge the admissibility of this confession on statutory grounds arguing that MCLA 750.157; MSA 28.354, precluded admission of this statement. Defendant's challenge was unsuccessful and this issue is not before this Court.

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

[4] *See Gunsby v State,* 316 So 2d 313, 314 (Fla App, 1975), where the Court said:

"The appellant brought on the problem by changing his testimony. He should not now be allowed to repudiate a statement which he made under oath, in the presence of counsel and after weighing his options, merely because he was guaranteed a sentence less than the

below, we disagree. The trial court, following argument on the motion for new trial, found as follows:

"The trial record shows that after his arrest and after being told of his Miranda rights on apparently at least two different occasions, the defendant told the police he wanted to make a deal and that he would talk about some unsolved murders in the Benton Harbor area. The police called Prosecutor Smietanka, who in turn called the defendant's attorney, Mr. David Peterson. Both attorneys then came to the jail.

"The record in this case shows that Attorney Peterson counselled privately with the defendant; then both attorneys met with the defendant who once again was informed of his rights not only by the prosecutor but also by his own attorney, Mr. Peterson. Defendant says he understood his rights and he wanted to waive them. Apparently not content with the verbal promises of an agreement by the prosecutor, the defendant got the agreement in writing, signed not only by him but apparently by the prosecutor, the defense counsel and one or two police officers. The defendant, it appears then, in the presence of his own attorney gave the calculated and the bloody details of the slaying of the Freemans with which we are concerned in this case.

"There is no claim that to get his confession beatings were used or that the defendant did not receive and understand his rights or that he is an illiterate or of unsound mind or was under the influence of any drug or alcohol or that he was denied his counsel or that he was tricked. There is no claim in this case that the prosecutor would not have kept his part of the plea agreement had the defendant done so.

"The claim, boiled down, is that even though he voluntarily and knowing his rights under the law furnished the details of the slayings which tied in or dovetailed with the evidence then known, the defendant had a right to violate his agreement and at the same time bar the prosecutor from showing the facts which he himself had supplied to the prosecutor.

maximum in return for it. On the peculiar set of facts of this case, the statement was properly admitted."

"There is no case cited by either counsel on every point with the one with which we are now concerned. There certainly is no case in Michigan. The case that comes closest to our situation is that of Earl Gunsby v The State of Florida, found in 316 Southern Reporter 2d Series 313, decided by the District Court of Appeals of Florida, Second District, on July 2, 1975. I would like to quote from page 314 as follows:

" 'Appellant contends that since the agreement to testify against Smith was part of the plea bargain, his statement and subsequent deposition should not have been introduced in evidence against him after the plea bargain was set aside.' Citing various cases which I will omit, but continuing the same paragraph, 'Appellant contends that his admissions were improperly introduced because they were not voluntary.'

"The appeal court in Florida quoted from the trial judge again at page 314 as follows; and this is the trial judge speaking quoted with apparent approval by the appeal court:

" 'This statement was made freely, voluntarily and in the full knowledge and presence of counsel and may not now be withdrawn. To allow this would sanction the total frustration of criminal justice in cases of multiple defendants merely by one of them doing as this defendant has done and then claiming relief from his wrongful act on the basis that since he has again been allowed to change his plea he should also be allowed to withdraw his sworn statement.' That is the end of the quote of the trial judge.

"The appeal court continues on, however, speaking for itself, 'The Appellant brought on the problem by changing his testimony. He should not now be allowed to repudiate a statement which he made under oath'— departing for a moment, it's conceded in this case of Langford this was not under oath, but continuing on in the quote—'in the presence of counsel and after weighing his options, merely because he was guaranteed a sentence less than the maximum in return for it. On the peculiar set of facts of this case, the statement was properly admitted.' And then the citation of another case from Oregon is omitted.

"The issue in Langford is whether an admitted killer, having violated his agreement he initiated and this court finds from this record voluntarily and knowingly made with the assistance of his own counsel to testify as to the details of the killings at the trial of his confederates, can prevent the prosecutor using such details in a later trial against him when the prosecutor has stood ready to fulfill his part of the agreement.

"It would be a shock to common sense and justice to so hold. This court knows of no such right. To cite cases where improper means were used to get a confession is to fail to appreciate the actual situation in this case and to further understand what is the law of the land and the state and what it prohibits. The law abhors forced or coerced confessions or those obtained unfairly by trickery or those taken from the ignorant or in violation of what today are called collectively Miranda rights. The basic reason is simple, that is, such confessions are not always reliable and may be false and further may be in violation of the defendant's rights under the law. The law has correctly prohibited a defendant from being compelled to incriminate himself. Such is part of our basic national Constitution as well as state Constitution.

"The law has never, however, prohibited a person from waiving his constitutional protections against self-incrimination and voluntarily admitting his wrongs. This is no great phenomenon; it occurs every day in courts and it occurs in police stations and it occurs in schools and in homes and on the streets. One can admit his faults and it is possible for him to do it voluntarily and, if he does so, he may meet them at some later time.

"In this case for a valuable consideration and knowingly, voluntarily and after having had the advice and assistance of counsel, who is one of the most experienced criminal trial practioners, *[sic]* in this circuit anyway, the defendant waived his rights."

The trial court then concluded:

"This court finds then that where a person, being

fully advised, informed and knowing all of his rights in the law, who has present with him an attorney with whom he has consulted, initiates and secures a beneficial plea bargain for himself in return for supplying details of a crime in which he was involved and then waives his rights and without force or trickery supplies the details of the crime, subsequently and for his own reasons violates the agreement, then the prosecutor may in a prosecution of such person use the details so furnished."

We agree on the basis of this record that defendant confessed voluntarily.[5] No additional hearing is required nor is one available since defendant only properly challenged the admissibility of this confession on other grounds.

Defendant's ineffective assistance of counsel argument is without merit. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

Affirmed.

---

[5] We express no opinion as to the result had the prosecution sought, encouraged, and solicited this plea bargain and subsequent confession. However, we doubt the admissibility of such a statement. *See People v Pallister,* 14 Mich App 139; 165 NW2d 319 (1968). A decision more nearly analogous to the instant case is *People v Jordan,* 34 Mich App 360; 191 NW2d 58 (1971), *cert den* 406 US 908; 92 S Ct 1616; 31 L Ed 2d 818 (1972). Herein the trial court found that defendant should not now be able to repudiate that waiver. *People v Van Epps,* 59 Mich App 277; 229 NW2d 414 (1975).