PEOPLE v JONES

Docket No. 66011. Argued December 2, 1981 (Calendar No. 12).—
Decided December 23, 1982. Certiorari denied by the Supreme
Court of the United States on April 18, 1983.

Jesse J. Jones was convicted in the Genesee Circuit Court, Philip
C. Elliott, J., of first-degree murder. His conviction was based in
part on a statement made to the police detailing a robbery
attempt which resulted in the killing and implicating him and
two other persons. The statement was made in connection with
a plea agreement which the defendant later refused to fulfill. It
was admitted during trial over the defendant's objection. The
Court of Appeals, M. J. Kelly, P.J., and D. F. Walsh and Beas-
ley, JJ., affirmed in an unpublished opinion per curiam (Docket
No. 78-3255). The defendant appeals.

In opinions by Justice Kavanagh and by Justice Ryan concur-
ring in the result the Supreme Court held:

The statement made by the defendant should not have been
admitted in evidence; the conviction is reversed and the case
remanded for a new trial.

Justice Kavanagh, joined by Justices Williams and Levin,
would hold that a statement by a defendant implicating him in
a crime which is induced by a plea agreement is inadmissible
per se in a prosecution of the defendant for that crime.

1. The use of involuntary admissions in a criminal prosecu-
tion is prohibited by the Fifth Amendment because, under our
system of justice, the state must establish guilt by evidence
independently and freely secured and may not procure a con-
fession by coercion. A confession which is extracted by any sort
of threat or violence or which is obtained by any direct or
implied promise, however slight, or by the exertion of any
improper influence, is involuntary. In this case, the defendant's

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 21 Am Jur 2d, Criminal Law § 481.
When is statement of accused made in connection with plea bargain
negotiations so as to render statement inadmissible under Rule
11(e)(6) of the Federal Rules of Criminal Procedure. 60 ALR Fed
854.
[2, 4] 29 Am Jur 2d, Evidence §§ 529, 558-570.
[5] 60 Am Jur 2d, Perjury §§ 58, 59.

.

confession was made because of promises by the prosecutor in connection with a plea agreement. There is no reason to conclude that a confession is voluntary merely because the defendant initiated the bargaining, because he is still influenced by the state's promise of leniency.

2. Plea bargaining, to be effective and fair, must allow a defendant to be free to negotiate without fear that his statements will later be used against him. It follows that where, as in this case, a defendant merely offers to plead guilty and later withdraws the offer, the offer and statements made in connection with it should be inadmissible at the defendant's subsequent trial. To hold otherwise would put the defendant who offers or agrees to plead guilty in a worse position than a defendant who actually pleads guilty and later withdraws his plea. The inability of the prosecution to introduce such statements places it in no worse a position than it would occupy if an accused chose not to engage in plea bargaining at all.

Justice Ryan, joined by Chief Justice Fitzgerald and Justice Coleman, concurring in the result, would reverse on the particular facts of this case, not because the defendant's statement was involuntary per se, but because to affirm the defendant's conviction would violate the sense of fair play on which the Rule of Evidence making plea negotiations inadmissible is based and would exalt procedure over the substantive policy of plea bargaining. Creation of a rule based upon the Constitution of the United States that such statements are inadmissible per se is unprecedented and unwarranted. The Supreme Court of the United States has consistently applied a "totality of the circumstances" test and has rejected the per se approach in determining the voluntariness of such statements, as have Michigan courts. A per se approach is not justified in reviewing a plea bargain, particularly in this case. The defendant initiated the negotiations and refused to comply with the agreement. There was no allegation that the agreement was unfair, and the trial court found allegations that the statement was forced by the police to be totally incredible. The defendant was informed of his rights on three occasions and voluntarily waived his rights. The appropriate test is "totality of the circumstances".

Reversed and remanded.

OPINION BY KAVANAGH, J.

1. CRIMINAL LAW — PLEA BARGAINING — SELF-INCRIMINATION.

*A statement by a defendant made in connection with a plea agreement which implicates him in a crime is inadmissible in a*

*prosecution of the defendant for the crime after he refuses to fulfill the plea agreement.*

2. Criminal Law — Confessions — Voluntariness.

*A confession which is extracted by any sort of threat or violence or which is obtained by a direct or implied promise, however slight, or by the exertion of any improper influence, is involuntary and may not be admitted in a prosecution of the crime for which the confession was made.*

3. Criminal Law — Offers to Plead Guilty — Admissibility.

*An offer or agreement by a defendant to plead guilty and statements made in connection with the offer are inadmissible at a subsequent trial of the defendant.*

Opinion by Ryan, J.

4. Criminal Law — Plea Bargaining — Confessions — Admissibility — Constitutional Law.

*A statement by a defendant induced by a plea agreement which implicates him in a crime is not inadmissible per se under the United States Constitution; rather, the Supreme Court of the United States has consistently held that the voluntariness of the statement must be determined by looking at the totality of the circumstances.*

5. Criminal Law — Plea Bargaining — Confessions — Admissibility — Rules of Evidence.

*The Michigan Rules of Evidence make a statement made in connection with an offer to plead guilty inadmissible against the person making the offer, except in a criminal proceeding for perjury or false statement; the rule is based on the idea that plea negotiations should be encouraged, and also on a sense of fairness (MRE 410).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Earl R. Spuhler* for defendant.

Kavanagh, J. *(for reversal).* Jesse James Jones was convicted of first-degree murder by a jury and was sentenced to life imprisonment. MCL 750.316;

MSA 28.548. The conviction was based in part on his confessional statement, admitted into evidence over his objection.

On appeal, the Court of Appeals affirmed in an unpublished opinion, finding under the "totality of circumstances" that the defendant's confession was admissible. Defendant asserts that the statement made by him pursuant to a plea agreement that he later refused to carry out was improperly admitted into evidence.

We reverse the decision of the Court of Appeals and hold that the statement made by the defendant required by the plea agreement is inadmissible per se. We remand for a new trial.

On December 28, 1977, Thomas Chiavares was murdered at the Hockstad Pharmacy in Flint, Michigan, during the course of an armed robbery. On April 27, 1978, defendant Jones was arrested for unlawfully carrying a sawed-off shotgun. Sergeant Darby of the Flint Police Department met with Jones on April 28, 1978, while Jones was in custody for federal and state weapons offenses. Jones was advised of his rights under *Miranda*,[1] and, upon a waiver of his rights, he discussed the weapons charges.

During that interview, Jones was told that he was a suspect in the Hockstad murder case. Sergeant Darby asked Jones if he wanted to discuss that crime and reminded him of his *Miranda* rights. Jones denied knowing anything about the murder, and the discussion returned to the weapons charges. Jones asked about the possible penalty for the federal and state weapons offenses. Darby told Jones that the federal firearms charge had a ten-year maximum sentence and that the

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

state charge had a possible sentence of five years. Jones was also told that he could possibly be sentenced to prison for violating parole. Jones inquired as to what consideration he would be given if he were to discuss the Hockstad murder. He said he knew a great deal and could clear up the case.

Sergeant Darby contacted the prosecutor and a federal agent and advised Jones that if he would give a statement implicating himself in the Hockstad murder and would testify against the others involved, the federal and state gun charges would be dropped and Jones could plead guilty to manslaughter. Jones was again advised of his *Miranda* rights, and he voluntarily waived his right to counsel and agreed to tell all he knew about the Hockstad case. He then made the confessional statement now at issue to the police. His statement detailed the planning and carrying out of the robbery attempt and killing, fully implicating himself and two others.

Later Jones refused to carry out the plea agreement. He was charged with murder in the perpetration of an armed robbery. A pretrial motion to suppress the confession was filed by defendant's trial attorney, and an evidentiary hearing was conducted. At the conclusion of the hearing, the trial court determined that the confession was voluntary and thus was admissible as evidence.

On the morning of the trial, the prosecutor acknowledged a willingness to fulfill the plea agreement, but Jones again refused. At trial, defendant's confession was admitted into evidence and presented to the jury over the objection of defendant's attorney. Jones was convicted of first-degree murder and received a mandatory sentence of life imprisonment.

The Court of Appeals affirmed defendant's conviction and found under the "totality of the circumstances" that the trial court's decision that defendant's confession was properly admissible as evidence was not erroneous.[2]

The use of involuntary admissions in a criminal prosecution is prohibited by the Fifth Amendment right against self-incrimination:

"In criminal trials, in courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person 'shall be compelled in any criminal case to be a witness against himself.' " *Bram v United States,* 168 US 532, 542; 18 S Ct 183; 42 L Ed 568 (1897).

The Fifth Amendment's right against compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the states. *Malloy v Hogan,* 378 US 1, 6; 84 S Ct 1489; 12 L Ed 2d 653 (1964).

The reason that involuntary confessions are not admissible evidence was set forth by the Court in *Rogers v Richmond,* 365 US 534, 540-541; 81 S Ct 735; 5 L Ed 2d 760 (1961):

"Our decisions under [the Fourteenth] Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, *i.e.,* the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system

---

[2] *People v Jones,* unpublished opinion per curiam of the Court of Appeals decided April 25, 1980 (Docket No. 78-3255).

in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth. See *Chambers v Florida,* 309 US 227; 60 S Ct 472; 84 L Ed 716 (1940); *Lisenba v California,* 314 US 219, 236; 62 S Ct 280; 86 L Ed 166 (1941); *Rochin v California,* 342 US 165, 172-174; 72 S Ct 205; 96 L Ed 183 (1952); *Spano v New York,* 360 US 315, 320-321; 79 S Ct 1202; 3 L Ed 2d 1265 (1959); *Blackburn v Alabama,* 361 US 199, 206-207; 80 S Ct 274; 4 L Ed 2d 242 (1960). And see *Watts v Indiana,* 338 US 49, 54-55; 69 S Ct 1347; 69 S Ct 1357; 93 L Ed 1801 (1949)."

In determining whether a confession is voluntary, the test is whether the confession was " 'extracted by any sort of threats or violence, *[or] obtained by any direct or implied promises, however slight,* [or] by the exertion of any improper influence.' " *Bram, supra,* pp 542-543. (Emphasis supplied.)

This test has been applied by several recent federal and state courts, which have found that confessions induced by promises of leniency are inadmissible.[3] The decision of the court in *Gunsby*

[3] *Gunsby v Wainwright,* 596 F2d 654 (CA 5, 1979), *cert den* 444 US 946; 100 S Ct 307; 62 L Ed 2d 315 (1979); *McLallen v Wyrick,* 498 F Supp 137, 139 (WD Mo, 1980) ("A confession can never be received in evidence where the prisoner has been influenced by any threat or promise."); *United States v Harris,* 301 F Supp 996, 999 (ED Wis, 1969) ("Having found that the defendant confessed in return for what he believed to be the promise of the law enforcement officials to secure certain reciprocal treatment, I hold that his confession * * * was not voluntary and hence is inadmissible."); *People v Quinn,* 61 Cal 2d 551, 554; 393 P2d 705, 707; 39 Cal Rptr 393, 395 (1964) (Traynor, J.) ("A confession or admission induced by promises of leniency or by threats is involuntary and therefore inadmissible."); *Bradley v State,* 356 So 2d 849, 850 (Fla App, 1978) ("[A]n accused may not be improperly urged by direct or implied promises to make a statement, in violation of the basic tenet of law that a confessing defendant should be entirely free from the influence of hope or fear."); *People v Overturf,* 67 Ill App 3d 741; 385 NE2d 166 (1979); *State v Tardiff,* 374 A2d 598, 600 (Me, 1977) ("That a confession which has been extracted from a defendant as the result of assurances or promises of leniency is inadmissible, is well established."); *Common-*

*v Wainwright,* 596 F2d 654 (CA 5, 1979), *cert den*
444 US 946; 100 S Ct 307; 62 L Ed 2d 315 (1979), is
particularly noteworthy because of the similarity
of its factual situation to the case at bar. In
*Gunsby,* in exchange for a maximum sentence of 7-
1/2 years and no objection from the state to proba-
tion, the defendant agreed to plead guilty and
testify against two codefendants. Additionally, pur-
suant to the plea bargain, the defendant gave a
statement incriminating himself and a codefen-
dant. However, the plea bargain was set aside
after the defendant testified because his testimony
tended to exculpate rather than incriminate his
codefendant. The confession was admitted into
evidence at trial over objection, and the defendant
was convicted and sentenced to 20 years in prison.

In granting the defendant's petition for habeas
corpus, the Fifth Circuit held that because the
statement was given as a result of promises made
by the state in the plea bargain, "[t]he district
court's conclusion that the statement was legally
involuntary and inadmissible at Gunsby's state
trial was thus compelled under *Hutto v Ross,* 429
US 28; 97 S Ct 202; 50 L Ed 2d 194 (1976)." "The
*[Hutto]* Court held that the confession was not the
result of any direct or implied promise and was
voluntarily given. Conversely, a confession given
as the result of a direct or implied promise would
be legally involuntary." *Gunsby, supra,* p 656.

In the instant case, the confession was made as

---

*wealth v Meehan,* 377 Mass 552, —; 387 NE2d 527, 534 (1979), *cert dis*
*as improvidently granted* 445 US 39; 100 S Ct 1092; 63 L Ed 2d 185
(1980) ("An officer may suggest broadly that it would be 'better' for a
suspect to tell the truth, may indicate that the person's cooperation
would be brought to the attention of the public officials or others
involved, or may state in general terms that cooperation has been
considered favorably by the courts in the past. What is prohibited, if a
confession is to stand, is an assurance, express or implied, that it will
aid the defense or result in a lesser sentence.") (Footnotes omitted.)

part of an agreement. In return for a statement implicating himself in the Hockstad murder and testimony against the others included, Jones would be permitted to plead guilty to manslaughter for the Hockstad murder, and the unrelated federal and state gun charges would be dropped. There is no question but that Jones's confession was "obtained by" the prosecutor's promise.

The people contend that where an accused initiates the bargaining session with the police and prosecuting authorities, he should not be heard to complain that his statement was involuntary. Several state courts,[4] along with the Michigan Court of Appeals,[5] have held that a confession is not "induced" when a defendant initiates the bargaining. However, the distinction is irrelevant.[6] The confession is a product of the plea agreement whether the defendant, the prosecutor, or a police officer initiates the bargaining.

The fact that the defendant initiates the bargaining does not mean that the defendant is not influenced by the state's promises. The confession is no more reliable simply because the defendant begins the negotiating. In *People v Wolcott,* 51 Mich 612, 615; 17 NW 78 (1883), Justice Cooley agreed with the reasoning of many other courts and found that no reliance can be placed on admis-

---

[4] *State v Harwick,* 220 Kan 572; 552 P2d 987 (1976), *State v Jordan,* 114 Ariz 452; 561 P2d 1224 (1976), *Taylor v Commonwealth,* 461 SW2d 920 (Ky App, 1970), and *State v Hutson,* 537 SW2d 809 (Mo App, 1976).

[5] *People v Jones,* fn 2 *supra,* and *People v Langford,* 76 Mich App 197, 199; 256 NW2d 578 (1977).

[6] The fact that the defendant initiated the bargaining was apparently of no significance to the court in *United States v Harris, supra,* fn 3. In *Harris,* the defendant indicated that he would be willing to provide information if he would receive certain considerations, and then proceeded to name three conditions. The court found that the defendant's confession was involuntary without discussion of the fact that the defendant defined the terms of the bargain.

sions of guilt obtained by assurances of leniency "for the very obvious reason that they are not made because they are true, but because, whether true or false, the accused is led to believe it is for his interest to make them." (Citations omitted.) However, it is no less in the defendant's interest to accept a plea bargain when he initiates the bargaining than when bargaining is initiated by the state. Therefore, because the defendant is still influenced by the state's promises of leniency and there is no reason to conclude that a confession pursuant to a plea bargain initiated by the state is any more reliable than the same confession when bargaining is initiated by the defendant, we find no reason to conclude that a confession is voluntary merely because the defendant initiates the bargaining.

Similarly, while *Miranda* warnings and advice of counsel (defendant Jones voluntarily waived his right to counsel) tend to support a conclusion that a plea was a well-advised, intelligent exercise of choice, they do not negate the pressure or inducements of the plea bargain.[7]

The Court of Appeals held that the issue of the applicability of MRE 410 was not properly subject to review because the defendant did not raise the issue at trial. MRE 410 is not the basis of our decision today, but the rule and its rationale support our decision.

Under MRE 410, defendant's confessional statement could not be used against him:

---

[7] See, *e.g.*, *People v Overturf,* 67 Ill App 3d 741, 744; 385 NE2d 166, 168 (1979) ("It is a well settled rule that even where constitutional rights have been waived, promises of leniency which induce defendant to make a statement or confession may well render such statement or confession involuntary.") *State v Tardiff,* 374 A2d 598, 601 (Me, 1977) ("The fact that the defendant was informed of his *Miranda* rights prior to making his confession does not cure the improper inducement which led to it.")

"Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of *an offer to plead guilty* or nolo contendere to the crime charged or any other crime, *or of statements made in connection with any of the foregoing* pleas or *offers,* is not admissible in *any* civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement." (Emphasis supplied.)

MRE 410 is similar to Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure.[8] The purpose of these rules is to promote the disposition of criminal cases by compromise[9] and to permit the unrestrained candor which produces effective plea discussions.[10]

---

[8] Rule 11(e)(6) of the Federal Rules of Criminal Procedure which supplanted Rule 410 of the Federal Rules of Evidence was amended April 30, 1979, to read:

"(6) *Inadmissibility of Pleas, Plea Discussions, and Related Statements.* Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

"(A) a plea of guilty which was later withdrawn;

"(B) a plea of nolo contendere;

"(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

"(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

"However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel."

[9] FRE 410, Advisory Committee's Notes.

[10] F R Crim P 11, Notes of Advisory Committee on Rules.

The plea-bargaining process is an asserted component of the administration of criminal justice. It has become an accepted fact of life. Chief Justice Burger expressed the need and desirability of the plea-bargaining process in *Santobello v New York*, 404 US 257, 260-261; 92 S Ct 495; 30 L Ed 2d 427 (1971):

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v United States*, 397 US 742, 751-752 [90 S Ct 1463; 25 L Ed 2d 747] (1970)."

For plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him. In excluding a defendant's plea-related statements, Judge Coleman of the Fifth Circuit Court of Appeals wrote:

"If, as the Supreme Court said in *Santobello*, plea bargaining is an essential component of justice and,

properly administered, is to be encouraged, it is immediately apparent that no defendant or his counsel will pursue such an effort if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt. Moreover, it is inherently unfair for the government to engage in such an activity, only to use it as a weapon against the defendant when negotiations fail." *United States v Ross,* 493 F2d 771, 775 (CA 5, 1974). See *United States v Herman,* 544 F2d 791 (CA 5, 1977).

This decision is consistent with prior Michigan law holding inadmissible at a subsequent trial a plea of guilty which was later withdrawn. *People v Street,* 288 Mich 406; 284 NW 926 (1939); *People v Trombley,* 67 Mich App 88; 240 NW2d 279 (1976). In *People v George,* 69 Mich App 403; 245 NW2d 65 (1976), the Court held that statements made in connection with withdrawn guilty pleas are likewise inadmissible at the defendant's subsequent trial. It follows that when the defendant merely offers or agrees to plead guilty, the offer and statements made in connection therewith should also be inadmissible at the defendant's subsequent trial. To hold otherwise would put the defendant who merely offers or agrees to plead guilty in a worse position than the defendant who actually pleads guilty and later withdraws his plea.

The people are not prejudiced by our decision today. In the words of Circuit Judge Goldberg:

"the government's inability to introduce the statements made in a bargaining session does not place it in a worse position than it would occupy if an accused chose not to engage in plea bargaining at all." *Herman, supra,* p 797.

The government must fulfill its obligation of independently assembling and proving its case against the defendant.

Williams and Levin, JJ., concurred with Kav-
anagh, J.

Ryan, J. *(concurring in the result)*. Defendant
Jesse James Jones was convicted of first-degree
murder and sentenced to life imprisonment. MCL
750.316; MSA 28.548. His conviction depended
heavily on a statement made by him pursuant to a
plea-bargaining agreement in which he implicated
himself and his accomplices in an armed robbery
during which the murder occurred. The plea bar-
gaining was initiated by the defendant, and his
statement was used against him at trial when he
refused to abide by the agreement. He asserts that
the statement was improperly admitted into evi-
dence because it was involuntary.

My colleague has found the statement involun-
tary and inadmissible per se because it was the
product of a plea-bargaining agreement, even
though that agreement was initiated by the defen-
dant. It is said that the statement is a product of
the agreement and induced by the prosecutor's
promise to allow the defendant to plead guilty to
manslaughter, and agreement to drop certain
weapons charges. Thus, the confession was
coerced.

I disagree with my colleague's reasoning, but not
with the result reached. The creation of a per se
rule under the United States Constitution is an
unprecedented and unwarranted step. The United
States Supreme Court has consistently applied a
*totality of the circumstances* approach—a test ap-
plied by both the trial and appellate courts below.
Despite dicta indicating the possibility of a per se
test, the cases on point continue to apply the
totality test, and the United States Supreme Court
has rejected a per se approach in a somewhat
analogous case. *Brady v United States,* 397 US

742; 90 S Ct 1463; 25 L Ed 2d 747 (1970). A per se approach is unjustified, particularly in the circumstances of this case. It will only serve to confuse the application of the totality of the circumstances test in the courts below in future cases.

I

The defendant was arrested on April 27, 1978, for unlawfully carrying a sawed-off shotgun. He was questioned by Sergeant Darby of the Flint Police Department after being advised of his *Miranda*[1] rights. After being told that he was a suspect in a December 28, 1977, murder and asked if he wished to discuss it, and reminded of his *Miranda* rights, Jones denied knowing anything. Later, however, after being informed of the possible sentences for the state and federal weapons violations and for violation of parole, he inquired as to the consideration he might receive if he told what he knew of the murder.

Darby then contacted the assistant prosecutor and a federal agent. An assistant prosecuting attorney advised that Jones would be permitted to plead guilty to manslaughter if he would give a statement implicating himself in the murder and testify against anyone else involved. The federal agent indicated that all federal weapons charges would be dropped if Jones cooperated.

Jones agreed to give a statement. He was informed of his *Miranda* rights again and voluntarily waived his right to counsel. He then gave a

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

detailed statement concerning the murder and the robbery attempt during which the murder occurred.

Subsequently, Jones refused to carry out his plea bargain. As a result, the prosecutor charged him with murder in the perpetration of an armed robbery and, at trial, sought to have the defendant's confession introduced. A pretrial motion to suppress was filed on June 14, 1978, by the defendant's trial attorney. The trial judge conducted an evidentiary hearing and found the confession to be voluntary. The trial judge also found that Jones was street-wise and experienced in criminal proceedings, and that it was he who refused to abide by the agreement.

On the first day of trial, the prosecutor indicated his continuing willingness to abide by the agreement; the defendant, however, continued in his refusal to carry out the bargain. Consequently, Jones's confession was admitted into evidence and read to the jury over the objection of his attorney that the statement was "involuntary". Jones was convicted of first-degree murder on June 29, 1978, and later sentenced to life imprisonment.

On appeal, the appellate court applied the *People v McGillen #1*, 392 Mich 251; 220 NW2d 677 (1974), standard to the trial court's determination whether the defendant's statement was voluntary. It independently reviewed the facts and, like the trial court, applied a "totality of the circumstances" test to determine voluntariness. The Court of Appeals was not left with the firm and definite conviction that the trial court had erred. Thus, it affirmed.

## II

My colleague has found that the defendant's statement, made pursuant to the plea-bargaining agreement, is "inadmissible per se". There is no indication what standard of review is employed in reviewing the voluntariness determination of the lower courts, but my brother's reasoning clearly suggests that he believes any incriminating statement made pursuant to a plea-bargaining agreement is one induced by the prosecutor's promise and, therefore, involuntary under the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment.

I agree that the defendant's conviction must be reversed. However, I strenuously disagree with my colleague's reasoning which I think will have a devastating impact upon the jurisprudence of this state. A per se approach to this problem is unjustifiably broad, particularly under the circumstances of this case.

Neither precedent nor policy require a per se rule. It is well established that a defendant's involuntary confession is inadmissible to prove his guilt of the crime confessed, *Rogers v Richmond,* 365 US 534; 81 S Ct 735; 5 L Ed 2d 760 (1961), and this prohibition applies to the states as well, *Malloy v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964). The Supreme Court has indicated that an involuntary confession is one in which the subject's will has been overborne by either physical or psychological coercion. See *Schneckloth v Busta-monte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *Blackburn v Alabama,* 361 US 199; 80 S Ct 274; 4 L Ed 2d 242 (1960). A convenient criterion

for determining involuntariness is: "Is the confession the product of an essentially free and unconstrained choice by its maker?" *Schneckloth, supra,* p 225.

Despite the ease in stating this test, it is not so easy to apply. The United States Supreme Court has indicated that one must look at the facts of each situation—at the "totality of the circumstances"—to see whether a confession is voluntary. See, *e.g., Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978); *Clewis v Texas,* 386 US 707; 87 S Ct 1338; 18 L Ed 2d 423 (1967).

"In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogations. Some of the factors taken into account have included the youth of the accused, *e.g., Haley v Ohio,* 332 US 596; 68 S Ct 302; 92 L Ed 224 (1948), his lack of education, *e.g., Payne v Arkansas,* 356 US 560; 78 S Ct 844; 2 L Ed 2d 975 (1958), or his low intelligence, *e.g., Fikes v Alabama,* 352 US 191; 77 S Ct 281; 1 L Ed 2d 246 (1957), the lack of any advice to the accused of his constitutional rights, *e.g., Davis v North Carolina,* 384 US 737; 86 S Ct 1761; 16 L Ed 2d 895 (1966), the length of detention, *e.g., Chambers v Florida, supra,* the repeated and prolonged nature of the questioning, *e.g., Ashcraft v Tennessee,* 322 US 143; 64 S Ct 921; 88 L Ed 1192 (1944), and the use of physical punishment such as the deprivation of food or sleep, *e.g., Reck v Pate,* 367 US 433; 81 S Ct 1541; 6 L Ed 2d 948 (1961). In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. *Culombe v Connecticut,* 367 US 568, 603; 81 S Ct 1860; 6 L Ed 2d 1037 (1961).
"*The significant fact about all of these decisions is that none of them turned on the presence or absence of*

*a single controlling criterion;* each reflected a careful scrutiny of all the surrounding circumstances. See *Miranda v Arizona,* 384 US 436, 508; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966) (Harlan, J., *dissenting); id.,* pp 534-535 (White, J., *dissenting)." Schneckloth, supra,* p 226. (Emphasis added.)

Since *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), which required the trial judge to hold an evidentiary hearing and make an initial determination of voluntariness, Michigan courts have applied a totality of the circumstances test. This has been the analysis employed by this Court when reviewing a lower court's decision. See *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982); *People v Brannan,* 406 Mich 104; 276 NW2d 14 (1979); *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). Consequently, the establishment of a per se rule of involuntariness is a break with both federal precedent and Michigan precedent, which has basically followed federal law in this area. Although resting his decision on the federal constitution, my colleague fails to apply the totality test used by the United States Supreme Court. That Court has not based its decisions on the "presence or absence of a single controlling criterion". *Schneckloth, supra,* p 226.

The cornerstone of my colleague's argument is dictum from *Bram v United States,* 168 US 532; 18 S Ct 183; 42 L Ed 568 (1897). That Court, approvingly quoting a rule of law, said:

"In 3 Russell on Crimes (6th ed), p 478, it is stated as follows:

" 'But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the

exertion of any improper influence.'" *Bram, supra,* pp 542-543.

Admittedly, this language *standing alone* would lend itself to a per se approach; however, despite approval of this statement of the rule, the Court applied a totality of the circumstances approach. It said:

"In approaching the adjudicated cases for the purpose of endeavoring to deduce from them what quantum of proof, in a case presented, is adequate to create, by the operation of hope or fear, an involuntary condition of the mind, the difficulty encountered is, that all the decided cases necessarily rest upon the state of facts which existed in the particular case, and, therefore, furnish no certain criterion, since the conclusion that a given state of fact was adequate to have produced an involuntary confession does not establish that the same result has been created by a different although somewhat similar condition of fact. * * *

"The first of these statements but expresses the thought that whether a confession was voluntary was primarily one of fact, and therefore *every case must depend upon its own* proof." *Bram,* pp 548-549. (Emphasis added.)

*Bram* involved a defendant who gave a confession while in custody, alone and unrepresented by counsel. At no time were promises of leniency mentioned by his interrogator. Rather, the court looked at the circumstances of the interrogation, including the fact that he was forced to strip off his clothing, in finding the confession involuntary. Thus, *Bram* does not support the conclusion that a plea bargain in which a promise of leniency is made automatically makes the defendant's statement involuntary.

Even later cases which have approved of the *Bram* dictum have not adopted a per se approach.

In *Malloy v Hogan, supra,* the Court applied the Fifth Amendment to the states via the Fourteenth Amendment and stated that *federal standards governed* whether the self-incrimination privilege was properly invoked or not. *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), approved of *Bram's* formulation, *but* the Court specifically determined that a guilty plea made in order to avoid the possibility of the death penalty was not per se involuntary. Rather, voluntariness had to be determined by looking at all the circumstances. More recently, *Hutto v Ross,* 429 US 28; 97 S Ct 202; 50 L Ed 2d 194 (1976), the Court rejected the idea that a statement made in connection with a plea agreement, but not required by the agreement, was per se involuntary.[2] In doing so, it overruled the Eighth Circuit's deter-

---

[2] The Court in *Hutto* noted:

"This case does not involve the admissibility at trial of a guilty plea subsequently withdrawn by leave of court. That issue was settled in *Kercheval v United States,* 274 US 220; 47 S Ct 582; 71 L Ed 1009 (1927), which held that such pleas could not be used as evidence of guilt at a subsequent trial. *Nor does this case involve the admissibility in criminal trials of statements made during the plea negotiation process.* See F R Crim P 11(e)(6); *Moulder v State,* 154 Ind App 248; 289 NE2d 522 (1972); ABA Project on Standards for Criminal Justice, Pleas of Guilty, § 3.4 (Approved Draft, 1968)." 429 US 30, fn 3. (Emphasis added.)

It is interesting to note that both of the cases cited in the above quotation based their decisions on *policy grounds,* not constitutional grounds. The second proposition is of consequence to the immediate case. In *Moulder v State,* 154 Ind App 248, 258-259; 289 NE2d 522 (1972), the Indiana appellate court made a blanket rule that:

"Any communication relating to the plea bargaining process is privileged and inadmissible in evidence unless the defendant has subsequently entered a plea of guilty which has not been withdrawn."

The factual situation in that case differed from the immediate case, but the important point is that the court there first acknowledged the great importance of plea bargaining and then gave several policy considerations *for not allowing evidence of such negotiations.* The stated reasons are similar to the basis for our own MRE 410 and for FRE 410. Another important point in that case is that defense counsel made an objection to the presentation of a statement made in furtherance of a plea bargain on the grounds, basically, that it was unfair. See discussion below, section III.

mination of involuntariness because the statement "was made in connection with an offer to plead guilty and after a [plea] bargain had been agreed upon. *Mobley v Meek*, 531 F2d 924, 926 (1976)". 429 US 29. It then cited the *Bram* test. A per se approach is not supported by precedent. See also *United States v Grant*, 622 F2d 308 (CA 8, 1980).

Second, a per se approach is not justified in the plea bargaining situation, particularly in this case. My colleague extends *Bram's* rule to the plea bargaining situation, finding that because consideration in the form of a lesser charge, a recommended lighter sentence, and related benefits flow from the prosecutor to the defendant in a plea bargain, this consideration constitutes "direct or implied promises, however slight" thereby making the defendant's statement involuntary. This reasoning conflicts, however, with United States Supreme Court plea-bargain decisions and is inconsistent with the concept that a judicially accepted guilty plea *itself* is voluntary, even when made pursuant to promises of leniency.

In *Santobello v New York*, 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), the Court discussed the importance and legitimacy of plea bargaining in the course of determining that a defendant's conviction in a state court cannot be upheld when he complies with a plea bargain but the prosecutor does not. *Cf. People v Reagan*, 395 Mich 306; 235 NW2d 581 (1975).[3] Fundamental fairness in secur-

[3] My colleague also mentioned the importance of plea bargaining and the policy considerations of MRE 410 in promoting plea bargaining as well as candor in the process. Arguably, however, they are less forceful in a situation such as the immediate one where the defendant initiated the negotiations, voluntarily entered into a fair agreement, and then reneged on his bargain. McCormick, Evidence (2d ed), § 274, p 666 (1972) states:

"*Effect of acceptance of offer of compromise.* If an offer of compromise is accepted and a contract is thus created, the party aggrieved may sue on the contract and obviously may prove the offer and

ing an agreement and a sense of fair play were the basis for the *Santobello* Court's decision requiring the state court's judgment to be vacated, *not* the involuntariness of the plea.

"However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor. It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. *Moore v Michigan,* 355 US 155; 78 S Ct 191; 2 L Ed 2d 167 (1957).

\* \* \*

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello, supra,* pp 261-262.

Justice Douglas, in his concurring opinion, recog-

acceptance. Moreover, if after such contract is made and the offering party repudiates it, the other may elect to sue on the original cause of action and here again it seems the repudiating party may not claim privilege against proof of the compromise. The shield of the privilege does not extend to the protection of those who repudiate the agreements the making of which the privilege is designed to encourage." (Citations omitted.)

We are not required to apply general contract principles to plea agreements. *People v Reagan,* 395 Mich 306, 314; 235 NW2d 581 (1975). However, if there is any weakness at all in applying those policy considerations to the immediate case, that weakness is magnified many times when one attempts to justify a per se rule.

I agree with Justice Kavanagh that plea bargaining has become a "component of the administration of criminal justice" in this state. Yet, it is inconsistent to determine that all statements made pursuant to plea bargains are involuntary and still support a system which, on that reasoning, produces only coerced statements. Given the apparent importance of plea bargaining and its approval by the United States Supreme Court and my brother himself, it is difficult to understand how this Court can today subscribe to the belief that a statement made pursuant to a plea bargain is per se involuntary.

nized that a prosecutor's promise in a plea bargain situation could make a defendant's act involuntary, but only under certain circumstances, *not in every case.* He said:

"The decisions of this Court have not spelled out what sorts of promises by prosecutors tend to be coercive, but in order to assist appellate review in weighing promises *in light of all the circumstances,* all trial courts are now required to interrogate the defendants who enter guilty pleas so that the waiver of these fundamental rights will affirmatively appear in the record. *McCarthy v United States,* 394 US 459; 89 S Ct 1166; 22 L Ed 2d 418 (1969), *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969)." *Santobello, supra,* p 266. (Emphasis added.)

In *Brady v United States, supra,* 397 US 751, the Supreme Court rejected the idea that a guilty plea was involuntary because it was entered under the fear that the possibility of death could only be avoided that way. It found that the totality of the circumstances had to be examined to make a determination whether the plea was voluntary, and it specifically said that insofar as the voluntariness of the defendant's plea was concerned, there was little to differentiate the defendant in that case from a defendant who is permitted by the prosecutor and judge to plead guilty to a lesser included offense, or a defendant who pleads guilty to certain counts under the understanding that other counts will be dropped. In other words, there is no substantive difference between a defendant who pleads guilty to avoid the possibility of death and one who plea bargains as far as the voluntariness of the plea is concerned. If that is true,

certainly that reasoning applies equally to statements made pursuant to a plea bargain.[4]

The *Brady* Court, in its analysis, also rejected the idea that a "but for" connection between a guilty plea and its inducement—the apprehension of death by electing a jury trial—was sufficient to make the plea involuntary. This test is really the one used in a per se rule and is the test implicit in the *Bram* dictum; however, as noted before, *Brady* did not literally apply that dictum.[5] Supreme Court case law subsequent to *Brady* and involving plea bargaining has clearly rejected the idea that merely because a defendant chooses to plea bargain—to receive some consideration from the state in order to bestow a benefit on the state—the plea is involuntary.[6]

---

[4] To say that a statement made during the course of a plea bargain, no matter who initiates the negotiations, is involuntary merely because such statements are induced by a promise of leniency seems contrary to the very idea of a voluntary guilty plea. There is no logical distinction between a guilty plea before a judge and a statement made pursuant to a plea bargain. *Cf. People v George,* 69 Mich App 403; 245 NW2d 65 (1976). Under GCR 1963, 785.7(2), a court accepting a guilty plea must determine that it is indeed voluntary. If the mere fact that a promise induced a plea bargain makes statements pursuant to it involuntary, then, logically, a guilty plea made with the understanding that a prosecutor's promise of leniency will be followed is also involuntary. Both statements are made because of the promise. But, we have seen that a guilty plea entered pursuant to a plea agreement is not necessarily involuntary. See, *e.g, Hutto, supra.*

[5] It is possible that this later case law refusing to follow *Bram* literally may be a response to the legitimacy of plea bargaining today since the Court has recognized that it is not constitutionally impermissible, *Santobello, supra,* while at the time *Bram* was decided it was not widely accepted as legitimate. As my colleague has noted, plea bargaining is, at the present time, "an asserted component of the administration of justice". Given its importance, the United States Supreme Court obviously realized the devastating effect a finding that a guilty plea was involuntary would have simply because it was influenced by a "promise of leniency" or "by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the state is put to its proof". *Brady, supra,* pp 750-754. See also *Hunter v Swenson,* 372 F Supp 287 (WD Mo, 1974), *aff'd on other grounds* 504 F2d 1104 (CA 8, 1974), *cert den* 420 US 980; 95 S Ct 1410; 43 L Ed 2d 662 (1975).

[6] *Hutto v Ross,* 429 US 28, 30; 97 S Ct 202; 50 L Ed 2d 194 (1976).

Furthermore, under the facts of this case, a per se rule is particularly inappropriate. The defendant here initiated the negotiations for the plea of guilty. He is the one who refused to go through with the agreement. There were no allegations that the agreement itself was unfair, and the trial court specifically found the defendant's story that Sergeant Darby forced him to make the statement totally incredible. Jones was not unfamiliar with police practices or the legal system; as the trial judge found, he was street-wise. Three times he was informed of his *Miranda* rights, and he voluntarily waived his rights to counsel and to remain silent. Case law has indicated that, under facts such as these, the appropriate test is the "totality of the circumstances" test and not a per se rule that any statements given under a plea bargain agreement are involuntary.[7]

There is absolutely no justification for the creation of a per se rule in this case modifying the traditional "totality of the circumstances" test.

The Court stated:

"The Court of Appeals reasoned that respondent's confession was involuntary because it was made 'as a result of the plea bargain' and would not have been made 'but for the plea bargain.' *Id.,* pp 927, 926. But causation in that sense has never been the test of voluntariness. See *Brady v United States,* 397 US 742, 749-750; 90 S Ct 1463; 25 L Ed 2d 747 (1970). The test is whether the confession was ' "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." ' *Bram v United States,* 168 US 532, 542-543; 18 S Ct 183; 42 L Ed 578 (1897); see *Brady v United States, supra,* p 753; 90 S Ct 1463; 25 L Ed 2d 747."

[7] *Hunter v Swenson,* 372 F Supp 287 (WD Mo, 1974), *aff'd on other grounds* 504 F2d 1104 (CA 8, 1974), *cert den* 420 US 980; 95 S Ct 1410; 43 L Ed 2d 662 (1975); *State v Jordan,* 114 Ariz 452; 561 P2d 1224 (1976), *vacated on other grounds* 438 US 911; 98 S Ct 3138; 57 L Ed 2d 1157 (1978); *State v Harwick,* 220 Kan 572; 552 P2d 987 (1976); *Taylor v Commonwealth,* 461 SW2d 920 (Ky App, 1970), *cert den sub nom Brown v Kentucky,* 404 US 837; 92 S Ct 126; 30 L Ed 2d 70 (1971); *People v Langford,* 76 Mich App 197; 256 NW2d 578 (1977), *cert den* 440 US 964; 99 S Ct 1512; 59 L Ed 2d 779 (1979); *State v Hutson,* 537 SW2d 809 (Mo App, 1976).

Precedent does not support the imposition of such a rule, and indicates instead that such a rule is improper. My colleague disavows basing his decision on MRE 410, but the effect of his reasoning is to constitutionalize MRE 410. Such a step is unwarranted.

## III

We find that reversal is still mandated, however. MRE 410 states:

"Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement."

We agree with Justice KAVANAGH that, under this rule, the defendant's statement could not have been used against him, even though defense counsel did not rely upon MRE 410 in registering his objection at trial.

At the time of the trial, MRE 410 had been in effect for less than four months—since March 1, 1978. MRE 410 also changed the common-law rule in excluding statements made in connection with guilty pleas and offers of guilty pleas.[8] Having

---

[8] The common-law view was that "an offer of compromise of a criminal charge * * * may be received in evidence", 22A CJS, Criminal Law, § 736, p 1086, clearly implying that statements made in connection with the offer were also admissible. This is different from

failed to cite the newly adopted rule of evidence,
defense counsel registered the best objection avail-
able to him: that the statement was involuntary.
He was correct in his belief that the defendant's
statement was inadmissible. He merely cited the
wrong basis. MRE 410 is based on the idea that
plea negotiations should be encouraged, not un-
duly hampered by the fear that any statement as
well as any plea could subsequently be used
against a defendant. It is also based on a sense of
fairness. To affirm the conviction in this case
would violate that sense of fair play and would
exalt procedural niceties over the substantive pol-
icy of plea bargaining. The particular facts of this
case require a reversal, but not because the defen-

---

the civil case where statements made in connection with an offer to
compromise, as well as the offer itself, were not admissible unless
they were not made for settlement purposes or were independent
facts admitted by the party during negotiations. *Sanderson v Bark-
man,* 272 Mich 179; 261 NW 291 (1935). 11 Michigan Law & Practice,
Evidence, § 133, p 291.

It is true that in Michigan, before the Michigan Rules of Evidence
became effective, a previously withdrawn guilty plea could not be
commented upon or introduced by the prosecutor. *People v Street,* 288
Mich 406; 284 NW 926 (1939). However, research does not reveal any
cases determining whether statements made in connection with a
guilty plea or an offer to plead guilty were admissible, except for
*People v George,* 69 Mich App 403; 245 NW2d 65 (1976). In *George,*
the Court of Appeals reversed the defendant's conviction, which was
based upon a judicial statement providing a basis for the defendant's
later-invalidated guilty plea. The Court could see little difference
between a guilty plea and an incriminating statement made pursuant
to a guilty plea, and this rule was adopted on *policy* grounds, not
constitutional grounds. *George* cited no Michigan precedent on point.
It was new law which looked to Federal Rule of Evidence 410 for
support.

The federal evidentiary rule is similar to MRE 410. In the Report of
the Senate Committee on the Judiciary for FRE 410, the committee
objected to the House committee's proposal to exclude all statements
made in connection with guilty pleas or offers to plead. Rather, it
believed certain *voluntary* statements should be admissible. A com-
promise was reached allowing the admission of statements in subse-
quent criminal proceedings for perjury or false statement. *Federal
Rules of Evidence for United States Courts and Magistrates,* pp 39-40
(1979).

dant's statement was per se involuntary. Given the newness of MRE 410, the change it effected in the common law, and the fact that defense counsel registered a timely, if inaccurate, objection, I would reverse Jones's conviction and remand to the trial court for a new trial.

FITZGERALD, C.J., and COLEMAN, J., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.